## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THEOPOLIS WILLIAMS, # B-31679, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-cv-854-MJR |
| | ) | |
| WARDEN SPILLER, | ) | |
| WARDEN GOETTING, | ) | |
| K. MELVIN, | ) | |
| C/O BASOLO, | ) | |
| DR. GILISPE, | ) | |
| CHARLES W. HECK, | ) | |
| and MARCUS A. MYERS, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

**REAGAN, District Judge:**

Plaintiff, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a 24-year sentence for aggravated battery. He raises several claims: he was denied access to the law library; he was improperly disciplined when he threatened to harm himself in response to the denial of library access; and his mental health needs were ignored, in violation of an order entered in the pending class action case of *Rasho v. Walker*, Case No. 07-cv-1298 (C.D. Ill., Doc. 132, May 8, 2013).

In somewhat disjointed fashion, the complaint alleges that on March 31, 2014, Plaintiff asked Defendant Basolo for permission to go to the law library (Doc. 1, pp. 8, 18). He needed to work on his post-conviction case, in which he had an upcoming court date on April 24, 2014. That case was "still pending in the circuit court" as of the time Plaintiff filed the instant

suit on July 29, 2014 (Doc. 1, p. 1).  Defendant Basolo refused to allow Plaintiff to go to the library.

According to Plaintiff's account in his attached grievance, he "got frustrated and told [Defendant Basolo], what I have to do is hurt myself to get help." (Doc. 1, p. 18). Defendant Basolo did not contact mental health staff to assist Plaintiff after hearing these remarks, but instead wrote Plaintiff a disciplinary ticket for 206 – Intimidation or Threats (Doc. 1, pp. 18, 21).  Plaintiff insists he was not threatening Defendant Basolo, nor did he attempt to hurt him at the time of his "mental breakdown," thus the ticket was false (Doc. 1, p. 19).

On April 7, 2014, Defendants Heck and Myers conducted the hearing on Plaintiff's disciplinary charge (Doc. 1, p. 21).  Plaintiff pled not guilty.  When describing his discussion with Defendant Basolo upon being refused permission to go to the library, Plaintiff said, "I asked how I can get out of here, I said if you don't get me out of here I'm going to hang myself."  *Id*.  According to Defendant Basolo's account, Plaintiff had told him, "If you don't get me out of this cell I'm going to do something stupid," and when questioned, responded that "If you don't move me you will figure it out, you will regret it."  *Id*.  Defendants Heck and Myers took Plaintiff's remarks at the hearing as a partial admission of guilt.  He was found guilty and punished with one month in segregation and a one month demotion to C-grade.  Defendant Warden Spiller approved these sanctions.

Plaintiff filed a grievance seeking expungement of the disciplinary action.  He claimed that Defendant Basolo did not follow the proper procedure for dealing with "Mental Health Inmates," which required him to contact Mental Health Services before writing a ticket (Doc. 1, p. 19).  The grievance was denied by Defendant Melvin (Doc. 1, p. 20).  Defendants Spiller and Goetting (assistant warden) refused to take any action when Plaintiff told them that

he had been falsely accused and should not be in segregation (Doc. 1, pp. 1-2).

Plaintiff asserts his belief that all the named Defendants were aware of the pending case of *Rasho v. Walker*, Case No. 07-cv-1298 (C.D. Ill.), yet all have refused to "obey this law" (Doc. 1, p. 8).  He characterizes his exchange with Defendant Basolo as a "cry for help" which should have prompted the officer to summon a crisis team to assist Plaintiff after he threatened suicide.  Plaintiff also includes Defendant Dr. Gilispe (Mental Health staff) as a party (Doc. 1, p. 3).  He told her about the *Rasho* case, and begged her to help him because he had been placed in a "strip room" for five days with no clothes, and put in segregation for a false ticket.  However, she did nothing in response.

As relief, Plaintiff seeks damages for his confinement in segregation and in the strip cell, and for the denial of access to the law library (Doc. 1, p. 9).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.  After fully considering the allegations in Plaintiff's complaint, the Court concludes that this action is subject to summary dismissal.

Plaintiff's claims grouped into the following counts:   Denial of access to the law library **(Count 1)**; due process violation/confinement in segregation on false disciplinary charge **(Count 2)**; and failure to comply with the Illinois Department of Corrections (IDOC) mental health care policy or the requirements of *Rasho v. Walker* **(Count 3)**.  The complaint fails to state a constitutional claim upon which relief may be granted on any of these claims.

**Dismissal of Count 1 – Denial of Access to Law Library**

Inmates should be allowed reasonable access to law library resources, however, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). A prisoner's complaint must "spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Id.*

In the case at bar, Plaintiff describes one occasion when he was not allowed to go to the law library, and states generally that "some days the law library [is] closed for no apparent reason" (Doc. 1, p. 8). He further notes that the post-conviction case he hoped to work on in the library is still currently pending. He does not claim that the limitation on his library access caused him to miss any deadline or resulted in any detriment to his ability to pursue the post-conviction matter.

Where the record does not reveal any hindrance to an inmate's ability to pursue a meritorious court action, a claim cannot be maintained for denial of access to the court. Actual or threatened detriment is an essential element of a § 1983 action for denial of court access. *Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021-22 (7th Cir. 1987). To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*,

622 F.3d 801, 805-06 (7th Cir. 2010).

Plaintiff does not make a single allegation which would describe an actual or potential limitation on his access to the courts, as a result of being denied permission to use the law library.   Accordingly, **Count 1** fails to state a constitutional claim upon which relief may be granted.

## Dismissal of Count 2 – False Disciplinary Charge

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed).  The decision of the disciplinary hearing board will also be sustained so long as it is supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).  The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

In the instant complaint, Plaintiff asserts that Defendant Basolo falsely accused him of intimidation or threats, when in fact his statement that he might have to harm himself was a cry for help.  While Plaintiff's remarks could have been interpreted that way, the adjustment committee had sufficient evidence before (it in the form of Defendant Basolo's disciplinary report summarizing their exchange, and Plaintiff's statement at the hearing) to conclude that

Plaintiff was guilty of the charge.  It is not the role of this Court to re-weigh the evidence heard

by the adjustment committee; all that is required is that the decision was based on *some*

evidence.  *Black*, 22 F.3d at 1402; *see also Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007)

(when it is apparent that even a meager amount of evidence supports the disciplinary action, the

court's inquiry ends).

> Furthermore, Plaintiff does not point to any procedural flaw in the hearing that

would run afoul of the protections required under *Wolff*.  He thus has failed to show any

deprivation of procedural due process in the conduct or outcome of his disciplinary hearing.

> Finally, even if the complaint had suggested a potential constitutional problem

with the disciplinary proceedings, Plaintiff's punishment with one month in segregation does not

raise a claim for deprivation of a liberty interest without due process.  An inmate has a due

process liberty interest in being in the general prison population only if the conditions of his or

her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the

ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner

v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate

disciplinary confinements has become vanishingly small").

> A court must consider two elements when assessing whether disciplinary

segregation conditions impose atypical and significant hardships:  "the combined import of the

duration of the segregative confinement *and* the conditions endured by the prisoner during that

period."  *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in

original).  The first prong of this two-part analysis focuses solely on the duration of disciplinary

segregation.  For relatively short periods of disciplinary segregation, inquiry into specific

conditions of confinement is unnecessary.  *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005)

(56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence").  In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

Plaintiff's case falls squarely within this rule.  He was in segregation for only one month – a relatively short time in the context of his 24-year sentence.  Aside from the five days Plaintiff was kept in the "strip cell" without clothing,[1] he does not point to any atypical or significant hardship he was forced to endure during that period.  His only complaints were that he was restricted from calling family and friends, was not in the general population, and was limited to one shower per week.  These are all among the usual restrictions placed on inmates in segregation, and do not implicate any constitutional concerns.

For these reasons, Plaintiff fails to state a constitutional claim upon which relief may be granted in **Count 2**.

## Dismissal of Count 3 – Failure to Comply with Mental Health Care Policy

Plaintiff insists that Defendant Basolo and others ignored IDOC policy when they refused to get him a crisis team or any consultation with mental health staff after he threatened to harm himself.  Even if Plaintiff is correct in his claim that Defendants failed to follow IDOC policy directives regarding the handling of a suicidal or mentally ill inmate, the failure of prison officials to follow state rules or administrative regulations does not give rise to a constitutional claim.  *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001); *Archie*

---

[1] Plaintiff gives no further detail about the conditions in the strip cell.  It appears that he was placed there as a response to his threat to hang himself, as a precautionary measure to keep him from carrying out that threat.  The mere deprivation of clothing in such a circumstance does not amount to a constitutional violation; Plaintiff does not claim that he lacked any means to cover his body (such as with a paper garment) or to keep warm.

*v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989) (a federal court does not enforce state law or regulations).

Further, the complaint does not state an Eighth Amendment claim for deliberate indifference to Plaintiff's serious mental health needs.  "A prisoner's claim for deliberate indifference must establish (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition."  *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted).  An inmate's need for treatment of a mental illness may be considered an objectively serious medical need.  *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).  "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk."  *Gomez,* 680 F.3d at 865.  The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm."  *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Plaintiff may have been suffering from a mental breakdown, as he put it, when he said he would have to hurt himself in order to get any help.  On the other hand, he may have made the statement in order to manipulate Defendant Basolo into granting his request to go to the library.  Plaintiff never claims that he had been diagnosed with any mental health condition prior to the incident with Defendant Basolo.  A medical need is objectively "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  Based on the facts described in the complaint, it is not clear that Plaintiff was suffering from an objectively serious mental health condition that would have been obvious to a lay person such as Defendant Basolo.

However, it is apparent that either Defendant Basolo or some other prison official gave credence to Plaintiff's remarks that he might be considering suicide, because Plaintiff states he was held in a "strip cell" for several days.  This is a measure commonly employed to ensure the safety of a suicidal inmate.  The complaint does not disclose whether the decision to put Plaintiff in the strip cell was made by Defendant Basolo, by a prison mental health professional, or by another party.  Nonetheless, that placement would appear to be a "reasonable measure" to address a risk of serious harm, in light of Plaintiff's comments as reported by Defendant Basolo. *See Forbes*, 112 F.3d at 267.  Considering all these factors, the complaint does not state an actionable claim that Defendant Basolo was deliberately indifferent to a known risk of harm to Plaintiff from a serious mental health condition.

Finally, whether or not the Defendants' actions complied with the Court's order in *Rasho v. Walker*, Case No. 07-cv-1298 (C.D. Ill., Doc. 132, May 8, 2013), Plaintiff cannot pursue a claim in this Court based on the law of that case.  The Agreed Order entered in *Rasho* does indeed set out a number of requirements that the IDOC has been ordered to fulfill, to ensure that the treatment of seriously mentally ill inmates complies with constitutional obligations.  A portion of the order addresses procedures that should be followed when a mentally ill inmate is facing disciplinary charges or is placed in segregation.  Significantly, the order provides that if a dispute arises as to whether the defendants in that action have failed to comply with the terms of the order, any legal action must be brought in the form of a motion to enforce the order (Doc. 132 in *Rasho*).  Obviously, such a motion must be brought in the pending *Rasho* case, before the District Court for the Central District of Illinois.

Plaintiff has in fact filed his own motion in the *Rasho* case on July 17, 2014, which he includes as an exhibit herein (Doc. 1, pp. 12-14)  The Court further notes that counsel

of record for the class of plaintiffs in *Rasho* recently filed a motion to enforce the Agreed Order (Doc. 182 in *Rasho*), which is still pending.  It would be improper for this Court to insert itself into that matter by allowing Plaintiff to pursue a claim in this case seeking to enforce the order imposed by the Central District.  Accordingly, **Count 3** shall also be dismissed for failure to state a claim upon which relief may be granted, but the dismissal shall be without prejudice to Plaintiff raising his claims in an appropriate motion before the Central District in *Rasho*.

## Disposition

For the reasons stated above, this action is **DISMISSED.  COUNTS 1 and 2** are **dismissed with prejudice** for failure to state a claim upon which relief may be granted. **COUNT 3** is **dismissed** for failure to state a claim upon which relief may be granted, however the dismissal is **without prejudice** to the claims being raised in the pending Central District case of *Rasho v. Walker*, Case No. 07-cv-1298 (C.D. Ill.).

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  A dismissal without prejudice may count as a strike, so long as the dismissal is made because the action is frivolous, malicious, or fails to state a claim.  *See Paul v. Marberry*, 658 F.3d 702, 704 (7th Cir. 2011).  Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, he will be liable for the

$505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).  Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike."  A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e)[2] may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: September 3, 2014**

s/ MICHAEL J. REAGAN
United States District Judge

---

[2] A Rule 59(e) motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.  FED. R. CIV. P. 59(e).